**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Hacker,<br><br>            Plaintiff,<br><br>v.<br><br>American Family Mutual Insurance Company SI, et al.,<br><br>            Defendants. | No. CV-22-01936-PHX-DLR<br><br>**ORDER** |

Plaintiff Craig Hacker alleges that Defendant American Family Mutual Insurance Company ("American Family") failed to stack uninsured motorist ("UM") or underinsured motorist ("UIM") coverage for insureds who had multi-vehicle policies and therefore routinely underpaid those insureds. Before the Court are three motions: Hacker's motion for class certification (Doc. 65) and American Family's two motions to exclude the expert report and testimony of Hacker's experts Steven Guy and Dr. Lance Kaufman. (Docs. 71, 72). All motions are fully briefed.[1] (Docs. 70, 77, 78, 79, 83, 84.) For the following reasons, the Court grants Hacker's motion for class certification and denies American Family's motions to exclude the expert reports and testimony of Guy and Dr. Kaufman.

**I.   Background**

In 2021, a court in this district ruled that Arizona law requires "stacking" of UM or UIM coverages within a multi-vehicle policy under A.R.S. § 20-259.01(H), where the

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

insurer did not provide the insured an opportunity to elect which vehicle's coverage was applicable to the claim. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct. 19, 2021). In the wake of that ruling, several plaintiffs filed similar cases, alleging the same theory of liability. This is one such case.

Hacker filed suit in Arizona state court in October 2022 (Doc. 1-1), and American Family timely removed to this court (Doc. 1). In his amended complaint, Hacker alleges that he suffered injuries in excess of $60,000 from a car collision caused by an uninsured non-party. (Doc. 27 at 2–3.) At the time, Hacker had a multi-vehicle insurance policy with American Family covering three vehicles with UM/UIM coverage of $50,000 per person and $100,000 per collision. (*Id.* at 3.) Hacker submitted a claim and American Family paid $50,000—the policy limit for one of the vehicles. (*Id.* at 4.)

In December 2022, this Court granted American Family's unopposed motion to stay because of an order in *Franklin v. CSAA Gen. Ins. Co.*, No. CV-00540-PHX-JJT, 2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022) certifying relevant questions to the Arizona Supreme Court. (Doc. 11.) In August 2023, American Family lodged the Arizona Supreme Court's decision in *Franklin* with this Court and discovery began. (Doc. 13.) The Arizona Supreme Court held that "insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ [§ 20-259.02](H)'s sole prescribed method for limiting stacking." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1146 (Ariz. 2023). The prescribed method requires insurers to "(1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148 (quoting § 20-259.01(H)).

Hacker alleges that he is entitled to stack his UM/UIM coverage and that American Family's refusal to pay the stacked coverage constitutes a breach of contract and a breach

of the covenant of good faith and fair dealing. (Doc. 27 at 8.) Accordingly, he brings claims for breach of contract and bad faith. (*Id.* at 19.)

Hacker now moves to certify the following class:

> All insured persons under one or more American Family Insurance Company Policies issued in Arizona to the same purchaser covering multiple vehicles at the time of a covered loss who, from the earliest allowable time to the date judgment enters, received UM/UIM benefits in an amount equal to the limits of only one of the UM/UIM coverages under the applicable policy or policies.

(Doc. 65 at 12–13.) American Family opposes class certification and seeks to exclude the report and testimony of two of Hacker's experts.

## II. Motions to Exclude

### A. Legal Standard

Rule 702 of the Federal Rules of Evidence "contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Broadly, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue[,] an expert may testify thereto." *Id.* at 589–90 (quotation omitted). However, trial courts must function as gatekeepers to expert testimony. *Id.* at 589.

The proponent of expert testimony has the burden of establishing that the expert is qualified to opine on the proffered issues and that his opinions are relevant to the case and meet the requirements of reliability. *See Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Particularly, an expert's opinion must be based upon sufficient facts or data or upon objective verifiable evidence. *See Domingo v. T.K.*, 289 F.3d 600, 605–06 (9th Cir. 2002). Further, any opinion that seeks to instruct the trier of fact as to the law is inadmissible. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted) (noting that "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court"). Finally, "[t]he exclusion of relevant, but cumulative, evidence is within the sound exercise of the trial court's discretion." *United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir. 1984).

1  Courts have latitude in deciding how to determine whether an expert's opinion meets the requirements of Rule 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999). A court "*may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But . . . the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Id.* (emphasis in original). Importantly, courts are not required to conduct a full *Daubert* analysis at the class certification stage. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1031 (9th Cir. 2024). Instead, a "more limited *Daubert* inquiry" may be sufficient at class certification, in which "the court considers only if expert evidence is useful in evaluating whether class certification requirements have been met." *Id.* "[A] district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018).

**B.    Report and Testimony of Guy**

American Family requests that the Court exclude the expert report and trial testimony of Guy. (Doc. 72.) American Family argues that Guy fails to opine on industry custom and practice and rather offers improper legal opinions. (*Id.* at 3, 6.) Further, American Family asserts that Guy cannot offer an opinion on what American Family knew or intended. (*Id.* at 9.) Hacker responds that the motion is premature and should not be decided until after additional discovery following class certification. (Doc. 79 at 6.) Alternatively, Hacker emphasizes that Guy merely opines on industry standards and that any legal references are context for those opinions. (*Id.* at 12–13.)

In 1983, Guy obtained his J.D. from the University of Arizona. (Doc. 63-2 at 6.) Since then, he has worked as an attorney for over 40 years largely on cases involving insurance and bad faith. (*Id.*) Recently, he has been retained as a consulting or testifying expert in various cases. (*Id.*) As American Family admits, "Guy is undoubtedly a qualified lawyer with vast experience in insurance law." (Doc. 83 at 11.) Guy's report summarizes Hacker's allegations, reviews his policy with American Family, summarizes Hacker's

claim notes, and then recounts legal and industry standards and practices before ultimately providing his opinions and conclusion that American Family breached its duty of good faith and fair dealing. (Doc. 63-2 at 8–38.)

At this stage, the Court only needs to determine if Guy's report is "useful in evaluating whether class certification requirements have been met." *Lytle*, 114 F.4th at 1031. The admissibly and scope of Guy's trial testimony can be challenged at a later stage in the litigation. Thus, while "[e]xpert testimony is not proper for issues of law," *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1999), the Court is mindful not to reject evidence at the class certification stage that likely could be presented in an admissible form at trial, s*ee Sali*, 909 F.3d at 1006. At this stage, "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Sali*, 909 F.3d at 1006. Here, the Court finds it is likely Guy could provide helpful testimony concerning industry customs and practices without veering into improper legal opinions and will thus consider his report for the purposes of class certification. *See Hyer v. City and County of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024). Because Guy's report is useful for determining class certification, American Family's motion to exclude is denied without prejudice to American Family moving again after the close of the next phase of discovery, if appropriate.

**C.    Report and Testimony of Dr. Kaufman**

For the class certification motion, Hacker relies on an aggregate damages model based on an analysis prepared by Dr. Kaufman. (Doc. 65-1.) American Family requests that the Court exclude the expert report and trial testimony of Dr. Kaufman. (Doc. 71.) In support, American Family provides the report of Dr. Benjamin Wilner. (Doc. 71-1.) American Family argues the aggregate damages model violates *Tyson Foods*. (Doc. 71 at 7.) The Court addresses those arguments below when analyzing predominance. American Family also challenges Dr. Kaufman's methodology. (*Id.* at 11–16.) Hacker responds that aggregate damages models are not precluded and that Dr. Kaufman uses established methods. (Doc. 78 at 10.)

In 2013, Dr. Kaufman obtained his Ph.D. in economics from the University of Oregon. (Doc. 65-1 at 20–21.) Since 2013, he has worked as an economist, and his current position is Principal Economist for Aegis Insight and Bardwell Consulting. (*Id.* at 20.) He has qualified as an expert in multiple courts and has experience performing "economic analysis and modeling of firms, markets, and individuals, including economic damages, lost profits, and lost earnings." (*Id.*) Dr. Kaufman is qualified to offer his report.

Dr. Kaufman calculates aggregate harm to class members by estimating the settlement payments they would have received but for American Family's practice to not stack coverage by using the cumulative distribution of the underlying value of a claim derived from a sample of settled claims. (*Id.* at 7.) This value can be estimated because settled claims follow an observable pattern and uncompensated loss follows a continuous distribution, which Dr. Kaufman reflects through established and reliable statistical tools including Kaplan-Meyer analysis, Log-Rank testing, and a Weibull-mixture model. (*Id.* at 12.) *See Moshier v. Safeco Ins. Co. of Am.*, No. CV-23-00225-PHX-DLR, 2024 WL 4503901, at *3 (D. Ariz. Oct. 16, 2024) (identifying Kaplan-Meyer curves and Weibull mixture models as "established statistical tools").

Dr. Kaufman's report is useful in evaluating whether the class certification requirements have been met. *Sali*, 909 F.3d at 1006; *Lytle*, 114 F.4th at 1031. Specifically, the report is useful to determine the fact of class-wide damages for the breach of contract claim under the predominance inquiry of Rule 23(b), which will be discussed below. Although American Family takes issue with the samples used for the model, this is an issue better resolved after the close of discovery. For now, the Court is satisfied that the analysis will eventually bear fruit. *See Lytle*, 114 F.4th at 1031. Because Dr. Kaufman's report is useful for determining class certification, American Family's motion to exclude is denied without prejudice to American Family moving again after the close of the next phase of discovery.

**III.    Motion for Class Certification**

    **A.    Legal Standard**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quotation and quotation marks omitted). Thus, to be certified, a proposed class must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Levya v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). A proposed class must also be maintainable under one of the three different types of classes defined in Rule 23(b). Fed. R. Civ. P. 23(a); *Levya*, 716 F.3d at 512. Hacker argues that the proposed class satisfies Rule 23(b)(3)[2] (Doc. 65 at 16), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must conduct a "rigorous analysis" to ensure the requirements of Rule 23(a) and 23(b)(3) have been satisfied. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). Hacker, as the party seeking certification, must prove each requirement by a preponderance of the evidence. *Id.*

    **B.    Rule 23(a) Requirements**

        **1.    Numerosity**

Numerosity is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). American Family does not contest that this requirement is satisfied. Hacker proposes a class of 546 members (Doc. 65 at 13), which is in accord with other courts in this district that have found the numerosity requirement satisfied in the UM/UIM insurance stacking context. *See Dale v. Travelers Prop. Cas. Ins. Co.*, No. CV-22-01659-PHX-SPL, 2024 WL 4503808, at *3 (D. Ariz. Oct. 16, 2024)

---

[2] Hacker alternatively argues the class meets the requirements for certification under Rule 23(b)(2) involving requests for injunctive relief and Rule 23(c)(4) allowing certification of "particular issues." Because these requests are made in the alternative to his request for Rule 23(b)(3) certification, there is no need to address them.

(certifying a class of 305 members); *Miller v. Trumbull Ins. Co.*, No. CV-22-01545-PHX-JJT, 2024 WL 3818608, at *4 (D. Ariz. Aug. 13, 2024) (certifying a class of over 350 members); *Dorazio v. Allstate Fire & Cas. Ins. Co.*, No. CV-23-00017-PHX-KML, 2025 WL 1652003, at *6 (D. Ariz. June 11, 2025) (certifying a class of 1,600 members). Hacker has satisfied the Rule 23(a) numerosity requirement.

### 2. Commonality

Commonality is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It is sufficient if there is only one question of fact or law common to the class. *Dukes*, 564 U.S. at 359. "Commonality exists where class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quotation omitted). Thus, what is even more important than "the raising of common 'questions,'" is "the capacity of a class-wide proceeding to generate common *answers*." *Dukes*, 564 U.S. at 350 (emphasis in original) (quotation omitted).

As Hacker notes, American Family does not contest commonality wholesale. (Doc. 77 at 8.) Rather, it asserts that common questions do not predominate, which the Court will address below. Hacker contends that all class members purchased multi-vehicle UM/UIM coverage from American Family with "the same or substantially similar policy language," requested that UM/UIM coverage, but only received the policy limit for one covered vehicle. (Doc. 65 at 13–14.) Hacker asserts there is a question common to all claims: "whether [American Family] breached its contracts with the Class when it failed to disclose and pay stacked UM/UIM benefits to Class Members." (*Id.* at 14.)

The Court agrees that this question is central to Hacker's claims and common among the proposed class members. A class-wide proceeding will generate a common answer that advances the litigation because Hacker's causes of action are identical to those of the rest of the class and all the policies at issue are Arizona policies and thus Arizona law controls and applies to each member. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250

(D. Ariz. 2022) (finding the commonality requirement satisfied where "each claim is based on a form contract and a uniform course of conduct towards each policyholder."). Hacker has satisfied the Rule 23(a) commonality requirement.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201 (9th Cir. 2024) (quotation omitted). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1202 (quotation omitted).

Hacker asserts that his claims are typical because he has no individual claims that differ from those of the proposed class and his claims arise from a similar set of facts. (Doc. 65 at 14–15.) American Family utilizes the same arguments to assert that either Hacker's claims are not typical, or that he is not an adequate representative. (Doc. 70 at 34–38.) The Court will address those arguments under the adequacy analysis. Hacker's claims are based on conduct by American Family that is not unique to him but rather a similar course of alleged conduct where American Family did not pay stacked coverage to the putative class members who insured multiple vehicles with UM/UIM coverage. This alleged course of conduct resulted in injuries to the other members similar to Hacker's injury. Hacker has satisfied the Rule 23(a) typicality requirement.

### 4.  Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale*

*Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). This "inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Small*, 122 F.4th at 1202 (quotation omitted). "[T]here are no fixed standards by which 'vigor' can be assayed" but "competency of counsel" is a prominent consideration. *Kim v. Allison*, 87 F.4th 994, 1002 (9th Cir. 2023). When considering counsel's competence, courts look to "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g).

   Hacker asserts that neither he nor his counsel have any conflicts with the proposed class and that his counsel has extensive experience in similar matters. (Doc. 65 at 15–16.) American Family does not challenge the competence of class counsel but argues that Hacker is not an adequate class representative for various reasons including: (1) he responded "Correct" in a deposition when asked "if you would have picked this policy up right after your accident and read this section, you would have understood American Family's intent to be to not provide stacking, right?"; (2) Hacker's counsel demanded the $50,000 and did not request stacking; (3) Hacker purportedly settled his claim; (4) the non-party driver in Hacker's collision was allegedly not in fact uninsured; (5) Hacker is abandoning potential claims; and (6) American Family handled Hacker's claim under processes that American Family has since changed in March 2022. (Doc. 70 at 35–38)

   American Family's arguments do not raise the possibility of antagonism between Hacker and the proposed class members. Rather, they go to whether Hacker's case can succeed. But the likelihood of success of Hacker's claims needs not be considered in order for Hacker to show that his case satisfies the requirements of Rule 23. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013). Such questions are better suited for summary judgment. Because Hacker has suffered a common injury to the proposed class and his claims are typical of the class, Hacker has an incentive to vigorously pursue his claims, and the Court finds no basis to believe any conflict of interest exists

between him and the other members. *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 116 (D. Ariz. 2022) (finding no conflict when commonality and typicality were met, and plaintiffs suffered the same alleged injury as the rest of the proposed class).

Further, Hacker has competent counsel as demonstrated by the firm's experience litigating class actions, including insurance bad faith and consumer-protection, and the fact that it has expended thousands of hours investigating and conducting discovery for this case. (Doc. 61-1 at 2.) Hacker and his counsel will fairly and adequately protect the interests of the proposed class and vigorously prosecute this action on behalf of the class. Accordingly, the Rule 23(a) adequacy requirement is met.

### C. Rule 23(b)(3) Requirements

#### 1. Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quotation omitted). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

"If the defendant provides evidence that a valid defense—affirmative or otherwise—will bar recovery on some claims, then the district court must determine, based on the particular facts of the case, whether individualized questions . . . will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (quotation and quotation marks omitted).

"[T]he defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Id.*

### i. Breach of Contract Claim

The elements of a breach-of-contract claim are: "(1) the existence of a contract; (2) breach; and (3) resulting damages." *First American Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016). As previously noted, the common question is whether American Family breached its contracts with the putative class members when it failed to disclose and pay stacked UM/UIM benefits to members. (Doc. 65 at 14.) This common question encompasses elements two and three of the contract claim. American Family does not dispute there is common evidence of a contract.

#### a. Breach

Hacker asserts there is "classwide evidence showing that whenever [American Family] paid a UM/UIM claim in the amount of a single limit under a multi-vehicle policy to a class member, [American Family] breached the contract." (*Id.* at 17.) This is because, Hacker asserts, "the amount of a bodily injury loss . . . would never match the exact amount of a policy limit to the penny" and so "the loss necessarily exceeded the single limit of the policy." (*Id.*) It was a breach for American Family to pay the single limit rather than stack. (*Id.*) American Family responds that Hacker must have evidence to establish that American Family breached the policy regarding each putative class member and thus cannot use common evidence to show liability. (Doc. 70 at 13.) It is not enough, American Family asserts, to show it had a common practice of not stacking; rather, to show breach Hacker must establish that class members did not receive the amount they were legally entitled to recover. (*Id.* at 14.)

American Family provides evidence that several insureds' claims were valued at less than policy limits but American Family still paid the limit. (*Id.* at 18–20.) That argument allegedly shows possibly as much as 19 percent of putative class members received the single limit despite not having damages up to the single limit amount. (*Id.* at

19.) American Family has thus invoked an individualized issue—that American Family paid limits even when damages were less, which leaves some class members uninjured—and provided evidence that at least some class members lack meritorious claims because of this issue, thus summoning the spectre of class-member-by-class-member adjudication. *See Van*, 61 F.4th at 1069. "When a defendant substantiates such an individualized issue in this way, the district court must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any questions affecting only individual members—that is, whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Id.*

Hacker has met this burden. He has shown that it is more likely than not that common issues will still predominate over individual ones because he has shown there is common evidence to establish breach. Hacker relies on an opinion in Guy's expert report for the proposition that whenever American Family paid a claim in the amount of a single limit the loss necessarily exceeded the single limit of the policy. (*See* Doc. 65-2 at 34.) But this logic is also bolstered by Dr. Kaufman's model. Dr. Kaufman states that "actual insurance claims are typically represented as a continuous distribution." (Doc. 65-1 at 12.) He notes that "under a continuous distribution all claims that are paid the limit would have an Uncompensated Loss strictly greater than the claim limit." (*Id.*) Further, the law in this Circuit is clear that certification is not precluded because a class "potentially includes more than a de minimis number of uninjured class members." *Olean*, 31 F.4th at 669. Although American Family can challenge those class members it believes have not been injured, this individualized issue will not predominate over the other common issues. Because there is common proof of breach, predominance is satisfied for this element of the claim.

### b.  Damages

Hacker acknowledges that damages for each class member will vary but relies on the report of Dr. Kaufman to demonstrate that class wide damages can be calculated in the aggregate. (Doc. 65 at 18.) American Family contests Hacker's damages model because it

argues individual members would not be able to prove their individual damages with evidence of what other claimants were paid and because there is no gap for representative data to fill. (Doc. 70 at 28–33.) Those arguments might have merit if they concerned proof of a breach to establish liability. But that is not the case here. Hacker uses the representative data to model aggregate damages, not class-wide liability, and aggregate damages models are a permissible means of establishing class-wide damage. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140 (9th Cir. 2016) ("[E]stablishing liability for underpayment in the aggregate is a permissible means of proceeding.").

Of course, individual damages in this case will vary, but "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) ("*Comcast* did not alter our holding that individualized damages issues do not alone defeat certification."). Because there is common proof of damages, predominance is satisfied for this element of the claim.

### ii. Bad Faith Claim

"An insurer commits the tort of bad faith by intentionally and without reasonable basis denying, failing to process, or failing to pay a claim." *Alvarez v. CSAA Gen. Ins. Co.*, No. CV-24-00617-PHX-SMB, 2025 WL 389140, at *7 (D. Ariz. Feb. 4, 2025) (citing *Noble v. National Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981)). "To show bad faith by the insurer, the insured must show: (1) that the insurer acted unreasonably toward the insured; and (2) that the insurer 'acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it.'" *Id.* (quoting *Trus Joist Corp. v. Safeco Ins.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986)).

Hacker asserts he "can show that on a classwide basis, [American Family] failed to disclose and pay stacked benefits all the while knowing that Arizona law required stacking." (Doc. 65 at 19.) American Family responds that the same individual issues that predominate in the breach of contract claim predominate in the bad faith claim because the claims are based on the same alleged conduct. (Doc. 70 at 27.) American Family also

asserts that whether it considered stacking is an individualized issue requiring a file-by-file review. (*Id.*)

For class certification purposes, the essential question is whether American Family's objective reasonableness can be determined on a class-wide basis. Hacker has established that it can. American Family's obligations to all putative class members were the same throughout the class period. An insurer must provide accurate information to its insured and although "an insurer is not required to explain every fact and provision without limitation . . . the duty of good faith encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 800 (Ariz. Ct. App. 2012). The Arizona Administrative Code requires an insurer disclose "all pertinent benefits [and] coverages." *Id.* (quoting Ariz. Admin. Code. R20-6-801(D)(1)). If stacked coverage limits were available, American Family's alleged practice of not informing insureds about those limits supports a claim for bad faith.

Additionally, American Family's claim handling practices were the same throughout the class period and there is evidence—which could be used for all class members—that American Family knew stacking was required. For example, internal correspondence between an American Family manager and her team stated that stacking was not to be offered voluntarily unless an attorney had demanded stacked coverages. (Doc. 61-7 at 2.) Unlike the breach of contract claim, American Family has not even raised the spectre of class-member-by-class-member adjudication for this claim. Hacker's bad faith claim presents common questions that can be resolved for all class members at once. Hacker has satisfied the Rule 23(b) predominance requirement for the bad faith claim.

### 2. Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Generally, the factors relevant to assessing superiority include "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any

litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A–D). This list is not exhaustive, and other factors may be considered. But "[w]hether a class action will be manageable 'is, by . . . far, the most critical concern in determining whether a class action is a superior means of adjudication.'" *Lara v. First National Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (quotation omitted).

Hacker asserts that a class action involving identical claims of a nearly identical class of insureds is superior to the alternative of over five hundred individual lawsuits. (Doc. 65 at 21.) American Family responds that a class action is not superior to individualized litigation because the potential for each putative class member to receive significant damages is adequate incentive for each member to maintain individual lawsuits. (Doc. 70 at 33–34.) Here, there is no indication class members are interested in controlling the prosecution of separate actions. Nor is there is any other litigation concerning this controversy begun by the putative class members that has been brought to the attention of the Court. Further, it is desirable to concentrate the litigation of these claims in this forum as it concerns Arizona law and American Family exercised its right to remove the litigation to this Court. Most importantly, the case will be manageable because there is common proof of the breach and bad faith through common contracts and the common practices of American Family. Hacker has shown that a class action is superior to other methods of adjudicating this controversy. The requirements for class certification have been satisfied here. Accordingly,

**IT IS ORDERED** that Hacker's motion for class certification (Doc. 65) is **GRANTED**.

**IT IS FURTHER ORDERED** that Craig Hacker is appointed as the Class Representative and that the law firm Hagens Berman Sobol Shapiro LLP is appointed as Class Counsel.

**IT IS ORDERED** that American Family's motion to exclude the expert report and testimony of Steven Guy (Doc. 72) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that American Family's motion to exclude the expert report and testimony of Dr. Kaufman (Doc. 71) is **DENIED** without prejudice.

Dated this 10th day of February, 2026.

Douglas L. Rayes
Senior United States District Judge